## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

**RICHARD VERNON MOORE**                                                        **PLAINTIFF**

**v.**                                      **Case No. 3:25-cv-00008-LPR**

**COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION**                                               **DEFENDANT**

### ORDER

The Court has reviewed the Recommended Disposition (RD) submitted by United States Magistrate Judge Joe J. Volpe (Doc. 13).  No objections have been filed, and the time for doing so has expired.  Nonetheless, as it always does, the Court has undertaken a *de novo* review of the RD in light of the entire case record.[1]  In light of that review, and for the reasons explained below, the Court (1) declines to adopt the RD's recommendation that this case be remanded pursuant to "sentence six" of 42 U.S.C. § 405(g), and (2) instead refers this case back to Judge Volpe to consider the merits of the remaining arguments set out in the parties' briefing.

This case challenges the Social Security Administration's decision to deny benefits to Richard Vernon Moore.  Today's Order primarily concerns how—in cases like this—the Court should deal with evidence that was not part of the administrative record below and thus not presented to the ALJ or the Appeals Council.  As a general matter, this Court cannot consider such evidence.  That's because 42 U.S.C. § 405(g) only authorizes the Court to issue a judgment "upon the pleadings and transcript of the record," and the transcript must "includ[e] the evidence upon which the findings and decisions complained of are based."  There is, however, a quasi-exception to the general rule found in the sixth sentence of 42 U.S.C. § 405(g):  "The court may . . . at any

---

[1] The Court has also reviewed a "rough" transcript of the Oral Argument Hearing held on May 6, 2025, that does not appear on the docket.

time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." If the claimant can meet both the material-evidence and good-cause requirements, then the reviewing court may remand the case to the Commissioner for further administrative proceedings before issuing a final judgment.

A little background will be useful. Mr. Moore filed this case *pro se*.[2] He attached to his opening brief in this Court a letter from a neurologist (Lon Burba, M.D.).[3] The letter was authored on March 21, 2025, nearly a year after the ALJ had issued his unfavorable decision. The letter was not part of the administrative record, which is understandable since the letter did not exist when the administrative record was finalized. Still, because the letter did not exist back then (and was thus not part of the administrative record), neither the ALJ nor the Appeals Council considered the letter during the administrative proceedings below.

The Commissioner objected to the introduction of the March 2025 letter.[4] Among other things, the Commissioner argued that this new evidence cannot be considered now and that Mr. Moore had not met either the materiality or good-cause requirements necessary for the Court to remand the case for consideration of new evidence.[5] Judge Volpe held a hearing where both parties presented oral argument.[6] At the hearing, Mr. Moore informed Judge Volpe that his attorney failed to submit several then-existing treatment records from Dr. Burba during the

---

[2] Compl. (Doc. 1).

[3] Pl.'s Br. (Doc. 7) at 6.

[4] Def.'s Br. (Doc. 9) at 8–9.

[5] *Id.*

[6] Oral Arg. H'rg Mins. (Doc. 11).

administrative proceedings.   Judge Volpe allowed Mr. Moore an opportunity to submit those medical records for examination.[7]  Mr. Moore submitted the following: one treatment record from Dr. Burba (mis-dated November 29, 2022 but actually from late November of 2024);[8] neurology records from Legacy Spine with related imaging results from Pavilion MRI dated May 6, 2024 through July 19, 2024;[9] and lab results from Baptist Health ordered on January 18, 2025.[10]  After examining the documents, Judge Volpe found that (1) the newly-submitted evidence is material to Mr. Moore's claims, and (2) the failure of Mr. Moore's lawyer to obtain or submit this evidence at the administrative level constitutes good cause.  The Court disagrees on both prongs.

First, the Court finds that the newly-submitted evidence is not material.  "Material evidence is 'non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the [Commissioner's] determination.'"[11]  The problem for Mr. Moore is that these records describe Mr. Moore's condition *after* the date of the ALJ's decision.

Consider, for example, the Legacy Spine records and related imaging results from Pavilion MRI.  That evidence unquestionably relates to Mr. Moore's condition after the date of the ALJ's decision—specifically, a change in Mr. Moore's condition following a May 1, 2024 episode that

---

[7] Notice of Medical Records (Doc. 12).

[8] *Id*. at 2–5.  Here's a non-exhaustive list of examples showing why the medical record must be mis-dated: (1) the medical record references an EMG/NCVS study that Mr. Moore underwent on July 19, 2024, *see* Doc. 12 at 22; (2) the medical record states that Mr. Moore is 44 years old, *see* Doc. 12 at 2, while the ALJ decision shows Mr. Moore was born on May 26, 1980, *see* Tr. at 39; (3) the medical record references a history of "thyroid cancer in 2023," *see* Doc. 12 at 2; and (4) the medical record says that Mr. Moore "has been married for nine years," *see* Doc. 12 at 2, and Mr. Moore states in his brief that he was married in 2015, *see* Doc. 7 at 1.  Additionally, Mr. Moore informed Judge Volpe at the evidentiary hearing that he did not begin seeing Dr. Burba until 2024.  Evid. Hr'g Tr. (Rough) at 09:02:30.  Mr. Moore states in his Complaint that he saw Dr. Burba on November 26, 2024, so the Court concludes that is the date Mr. Moore most likely received treatment from Dr. Burba.  *See* Compl. (Doc. 1) at 5.

[9] Notice of Medical Records (Doc. 12) at 6–27, 38–51.

[10] *Id*. at 28–37.

[11] *Krogmeier v. Barnhart*, 294 F.3d 1019, 1025 (8th Cir. 2002) (quoting *Woolf v. Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993)).

occurred shortly after Mr. Moore received a spinal steroid injection.[12]  Or consider Dr. Burba's

mis-dated treatment record, which also describes the change in Mr. Moore's condition following

that May 1, 2024 episode:

> I saw this nice patient who is a 44-year-old who states he cannot feel his legs since April of this year.  He states he underwent an epidural steroid injection at T11-12 and since then cannot feel anything below the bellybutton.  This began twenty seconds after the injection and then five minutes later he lost power in the legs and actually fell in the parking lot.[13]

Mr. Moore states in his Complaint that Dr. Burba's exam was performed on November 26, 2024,

more than six months after the ALJ decision was rendered.[14]  Importantly, there is no indication

in the mis-dated treatment record that Dr. Burba reviewed or relied on Mr. Moore's prior medical

records from the relevant time period in forming his opinions about Mr. Moore's potential

diagnoses—so the Court cannot conclude that the mis-dated record is chronologically relevant.

The same is true with respect to the other new evidence.  Dr. Burba's March 21, 2025 letter

states that Mr. Moore "has developed a very rare syndrome called dysreflexia," and that "[h]e is

unable to do even light sedentary desk activity" as a result.[15]  But the letter does not state or imply

that this condition developed before the ALJ's adverse decision in April 2024, and it only speaks

to Mr. Moore's condition as of the date of the letter.[16]  Similarly, Mr. Moore's January 2025 lab

results do not describe his condition during the relevant time period.

---

[12] *See* Doc. 12 (Legacy Spine Record dated May 6, 2024) at 6 ("[Mr. Moore] is s/p a Thoracic Epidural Steroid Injection at T11/12 completed on 5/1/24.  He states that now he is having to ambulate using a walker. . . .  He states that he is unable to feel his legs."); *id.* at 13 ("[Mr. Moore] recently underwent a T11-12 interlaminar epidural steroid injection.  He reports that after this injection his pain in the mid back area is worsened.  He is also having some difficulty walking. . . .  Overall, I am not quite certain what happened but he might [have] had a reaction to the steroid medication.").

[13] Doc. 12 (Dr. Burba Record) at 2.

[14] Compl. (Doc. 1) at 5.

[15] Pl.'s Br. (Doc. 7) at 6.

[16] *Id.*

In short, because the Court finds that Mr. Moore's newly-submitted evidence is not probative of his condition on or before April 25, 2024, the Court cannot conclude that the ALJ, faced with this new evidence, would be reasonably likely to overturn his thorough decision denying benefits.

Second, and in any event, with respect to most of these records, the Court does not agree that Mr. Moore has shown good cause for failing to make them a part of the record in the underlying administrative proceedings.[17] "Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing a sufficient explanation."[18] In this case, the administrative record did not close until December 4, 2024.[19] Thus, with some notable exceptions discussed in footnote 17, Mr. Moore had the opportunity to submit the evidence at issue for inclusion in the administrative record.

In his briefing, Mr. Moore states only that he was "unsure if all reported information was turned in over the course of [his] business agreement with" his attorney through the administrative proceedings.[20] Essentially, Mr. Moore's only proffered justification is that (1) he trusted his attorney to obtain and/or submit the documents in question, and (2) his lawyer, for an unknown

---

[17] The Court acknowledges that the Eighth Circuit has held that good cause exists where a claimant failed to include medical records that did not exist at the time of the underlying administrative proceedings. *See Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Accordingly, good cause exists for failing to incorporate the 2025 lab records and possibly the letter from Dr. Burba. *But see Hepp v. Astrue*, 511 F.3d 798, 808 (8th Cir. 2008) (finding no good cause where information in newly-submitted doctor letter could have been obtained prior to record closing). Of course, the Court has already found that those records are not material.

[18] *Hepp*, 511 F.3d at 808 (citing *Hinchey v. Shalala*, 29 F.3d 428, 433 (8th Cir. 1994)).

[19] In the Eighth Circuit, evidence submitted to the Appeals Council in conjunction with a request for review of the ALJ's decision "becomes part of the 'administrative record,' even though the evidence was not originally included in the ALJ's record." *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000) (citing *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992)).

[20] Pl.'s Br. (Doc. 7) at 2.

reason, did not do it.[21]  That doesn't demonstrate good cause.

Generally, the existence of good cause turns on the existence of some external force or occurrence that prevents an act from properly occurring.  Said another way, and borrowing from a slightly different legal context, "[t]he good cause standard applies in situations in which there is no fault" on the part of movant because "the need for [relief] is usually occasioned by something that is not within the control of the movant."[22]  Typical examples include failures of the post office to deliver properly posted documents or an unforeseen sickness that prevents the timely performance of a certain act.  None of that is at play here.  Instead, Mr. Moore suggests his attorney's failure to obtain and/or submit certain evidence on its own supplies the requisite good cause.

The problem for Mr. Moore is that an attorney's act or omission is typically not considered a force external to the client.  That is because, under normal agency principles, the acts and omissions of a lawyer are treated as the acts and omissions of his or her client.[23]  This exact point

---

[21] Mr. Moore alludes to two potential reasons for this, but he doesn't flesh out either theory.  First, he says that his attorney withdrew representation from his case, "citing rising costs with no reimbursement."  Compl. (Doc. 1) at 5.  But there is no indication in the record that his attorney withdrew representation prior to the final Appeals Council denial on December 4, 2024—and the record demonstrates that his attorney was submitting additional new medical records to the Appeals Council as late as October 24, 2024.  *See* Doc. 5 at 3.  Second, Mr. Moore states that his attorney "did not believe that Dr. Alonzo Burba was a real doctor."  Compl. (Doc. 1) at 5.  But, as further explained below, that type of attorney mistake does not constitute good cause, at least not unless there was some justifiable reason for the mistake.  Mr. Moore doesn't assert or provide any evidence concerning the reason for this mistake.

[22] *See* Fed. R. App. P. 4(a)(5)(A)(ii) advisory committee's note to 2002 amendment; *accord Alexander v. Saul*, 5 F.4th 139, 142 (2d Cir. 2021) ("The 'good cause' standard applies when the need for [relief] arises from factors outside the control of the movant; the 'excusable neglect' standard applies when the need for [relief] results from factors within the movant's control."); *Evans v. U.S. Postal Serv.*, No. 4:23-cv-00595-LPR, 2025 WL 2639890, at *2 (E.D. Ark. Feb. 4, 2025).

[23] *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–64 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.  Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1879))).

of law has been made crystal clear by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates L.P.*:

> There is one aspect of the Court of Appeals' analysis, however, with which we disagree. The Court of Appeals suggested that it would be inappropriate to penalize respondents for the omissions of their attorney, reasoning that "the ultimate responsibility of filing the proofs of claim rested with respondents' counsel." The court also appeared to focus its analysis on whether respondents did all they reasonably could in policing the conduct of their attorney, rather than on whether their attorney, as respondents' agent, did all he reasonably could to comply with the court-ordered bar date. In this, the court erred.
>
> In other contexts, we have held that clients must be held accountable for the acts and omissions of their attorneys. In *Link v. Wabash R. Co.*, we held that a client may be made to suffer the consequence of dismissal of its lawsuit because of its attorney's failure to attend a scheduled pretrial conference. In so concluding, we found "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." To the contrary, the Court wrote:
>
>> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."
>
> This principle also underlies our decision in *United States v. Boyle* that a client could be penalized for counsel's tardy filing of a tax return. This principle applies with equal force here and requires that respondents be held accountable for the acts and omissions of their chosen counsel.[24]

As a general matter, then, because attorney errors are attributable to the client, the good cause standard is not satisfied where the only reason a person provides for an omission is that his or her attorney didn't do what the attorney was supposed to do.

Depending on the specific context to which the good cause evaluation applies, there may

---

[24] 507 U.S. 380, 396–97 (1993) (internal citations and alterations omitted); *see also Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817 (8th Cir. 2001) ("[A] party is responsible for the actions and conduct of his [or her] counsel and . . . under appropriate circumstances, dismissal or default may be entered against a party as a result of counsel's actions." (internal quotation marks and citations omitted)).

well be exceptions to this general rule.  For example, in the context of the case at bar, perhaps the rule could be relaxed somewhat.  If an attorney's act or omission constituted excusable neglect or intentional malfeasance, one might be able to string together a persuasive argument that the good cause standard has been satisfied.  But, even if the Court were to indulge the possibility of this kind of relaxed standard, there's nothing to demonstrate that the failure of Mr. Moore's counsel to obtain and/or submit the evidence at issue was caused by anything other than garden-variety inattention or ordinary bad lawyering.[25]  We have no evidence that Mr. Moore's attorney was trying to intentionally harm Mr. Moore by omitting favorable documents.  And we have no evidence that the attorney's omission came from a mistake that was excusable.  So, we are left where we started.  Whatever omissions Mr. Moore's lawyer made are attributable to Mr. Moore and we have been provided no good cause to overlook the omissions.[26]

Having determined that a sentence-six remand is inappropriate, the Court refers this case back to Judge Volpe so that he may consider in the first instance whether substantial evidence supports the Commissioner's decision.

IT IS SO ORDERED this 13th day of February 2026.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[25] *Cf. Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 462 (8th Cir. 2000) (explaining that "garden-variety attorney inattention" does not constitute excusable neglect).

[26] This is undoubtedly a harsh result.  But the alternative is untenable.  It cannot be that, every time a lawyer fails to submit (or strategically chooses not to submit) a potential piece of evidence, a client could later successfully claim that there is good cause for consideration of that evidence.  That would render the good cause test illusory.  If the good cause test is to play any meaningful role here, something more than "my attorney didn't do what he should have" is required.

8